TYSON, Judge.
Victor Erving Gardner was indicted for assault in the first degree pursuant to § 13A-6-20, Code of Alabama, 1975. The appellant was found guilty “as charged in the indictment” and was given a five year sentence, with eight months to be served in the penitentiary, and the remaining period to be served on probation.
Kevin Edward Ness testified that on April 11, 1980, while at Arby’s Restaurant in Birmingham, he became involved with the appellant in an argument over who should be served first. He said as he left the restaurant, the appellant called to him. Ness then went to his car and the appellant approached his car and shot him in the back with a pistol. Ness testified he could not remember calling the appellant derogatory names or uttering racial slurs.
Valerie Cunningham testified that she was employed at Arby’s on the night in question, and witnessed the argument between the two men. She stated Ness made several racial remarks about the appellant. Ness left the restaurant and got a pool cue out of his car. Valerie Cunningham saw the appellant point a gun at Ness, at which point she called the police. She heard gun shots a few minutes later.
*629 Another employee of Arby’s, Bill Tid-more, testified that after Ness got the pool cue out of his car, he approached the appellant at the doorway of the restaurant and shook it at the appellant. Ness then followed the appellant to his car. When the appellant got to his car, he realized he had left his keys in the restaurant and went back inside to get them. Ness, who was waiting for the appellant at his car, then struck appellant’s car with a pool cue several times. Both men got in their cars, and then the appellant got out of his car and approached Ness’ car with a gun. The appellant then fired four or five shots at Ness through the vehicle window.
Jeff Angel, an employee of Wendy’s Restaurant which is located next to Arby’s, saw the appellant holding Ness down, and pointing a gun at his neck. The appellant fired once in the air and then Angel heard more shots. Ness then got up and had blood “all over” him.
Dr. Charles Balch testified that Ness was admitted to University Hospital and underwent surgery for a bullet wound in his chest. Dr. Balch stated it would not be unusual for Ness to suffer a memory loss of the events of that night, considering the trauma which he experienced.
Paul Daniel, a Birmingham police officer, testified that when he arrived at the scene, the appellant told him, “He called me a nigger and I shot him.” (R. 84). The appellant was armed with a .38 revolver, and a pool cue was found in Ness’ car. Broken glass was found beside Ness’ ear which appeared to be glass from the car window.
Officer Robert Zenah testified that he received the appellant’s gun, and found the gun had four spent casings and one live round in the cylinder.
The first witness for the defense was Janice King, the employee who waited on the two men at Arby’s. She testified that the appellant complained that he should have been waited on first. Ness replied, “Well, they wait on the men first.” (R. 112). Ness then called the appellant an “Uncle Tom”, (R. 112), and “Boy”, (R. 113). The two men began pushing each other, then went outside and began fighting. She observed Ness hit the appellant’s car with the pool cue, and watched the appellant when he came inside to get his keys. She then saw the appellant at Ness’ car with the gun, and then heard the gunshots.
Charles Roden and his wife, Kathy, and Robert Roden and his wife, Patricia, were customers at Arby’s on the night in question. While they were in the restaurant, they saw the appellant come back inside and get his keys. As he was leaving, Ness caught him by the arm, put the pool cue to his head, and began calling the appellant derogatory names. They heard the appellant say that he didn’t want any trouble, and he wanted to leave. The appellant went to his car and Ness followed. The appellant then followed Ness to his car and fired shots in the car.
The appellant testified that while he was waiting for his order, Ness began calling him names. When he left the restaurant, he saw Ness approaching him and swinging a pool cue. The appellant asked him to stop and went to his car. He went inside to get his keys and on the way out, Ness struck him with the pool cue and threatened him with something else. The appellant got his gun when Ness went to his car. The appellant could see Ness reaching under the seat for something and he fired a shot in the air and told Ness to stop what he was doing or he would shoot. The appellant saw what he thought was a gun in Ness’ hand and fired at Ness through the window. He ordered Ness to get out of the car. Ness fell out of the car onto the ground and then got up and ran and the appellant did not try to stop him.
I
The appellant seeks to attack the sufficiency of the indictment, which reads as follows: (R. 236), (omitting formal parts).
“VICTOR ERVING GARDNER, whose name is otherwise unknown to the grand jury, did, with intent to cause serious physical injury to another person, cause *630 serious injury to Kevin Ness by means of a deadly weapon, to-wit: a pistol, in violation of Section 13A-6-20 of the Alabama Criminal Code, against the peace and dignity of the State of Alabama.”
The appellant alleges this indictment failed to inform the appellant of the quo modo of the crime and, therefore, is defective. This same issue was raised before this court in McKinney v. State, 50 Ala.App. 271, 278 So.2d 719 (1973), except in that case, the indictment was not attacked by demurrer as it was in this cause.
In McKinney v. State, supra, the indictment reads as follows:
“The grand jury of said county charge that, before the finding of this indictment WILLIAM HENRY MCKINNEY did, with a deadly instrument, to-wit: a shotgun, feloniously assault Sidney N. Graham, a law enforcement officer, to-wit: a deputy sheriff for Jefferson County, Alabama, while the said Sidney N. Grahma (sic) was engaged in the active discharge of his lawful duty or duties as such deputy sheriff for Jefferson County.” (Emphasis added.)
McKinney also challenged the sufficiency of the indictment on the ground that he was not informed of the quo modo of the crime, because the indictment did not set out the manner in which the shotgun was used. The court ruled on the sufficiency of the indictment even though it was not required to do so because of the lack of a proper demurrer. This court stated that:
“The indictment meets the requirements of Title 15, Section 232, Code of Alabama, 1940, in that it sufficiently apprises the defendant of the charge against him so as to enable him to prepare his defense and affords him ample protection against a subsequent prosecution for the same offense.”
Therefore, we do not find any merit to the appellant’s argument that the indictment in question did not inform him of the quo modo of this offense.
II
The appellant also contends that the indictment is defective because it alleged the appellant caused “serious injury” to Kevin Ness rather than “serious physical injury.” We do not find that a fatal variance occurred in this cause. As we stated in Marsh v. State, 418 So.2d 191 (Ala.Cr. App.1982),
“The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted. Proof of a different crime or the same crime under a different set of facts deprives him of that notice to which he is constitutionally entitled.”
The indictment alleged that the appellant “did, with intent to cause serious physical injury . .., cause serious injury to Kevin Ness....” Clearly, the indictment gave the appellant sufficient notice of the charge against him, in order to enable him to defend himself properly at trial.
This record is free of error. Therefore, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.